IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WAYNE ARIC MORK,

                        Plaintiff,                    OPINION AND ORDER

        v.
                                                      06-C-319-bbc
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Because Judge Shabaz will be convalescing from shoulder surgery for an extended

period of time, I have assumed administration of the cases previously assigned to him,

including this one, which is an action for judicial review of an adverse decision of the

commissioner of Social Security brought under 42 U.S.C. § 405(g).  Plaintiff Wayne Mork

seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible

for Disability Insurance Benefits and Supplemental Security Income under Title II and Title

XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A).

Plaintiff contends that the decision of the administrative law judge who denied his claim is

not supported by substantial evidence because the judge improperly rejected the opinion of

plaintiff's treating physician.  However, I find that the administrative law judge gave good

1

reasons for rejecting the opinion of plaintiff's treating physician and that the record contains substantial evidence to support his decision.  Accordingly, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

## FACTS

### A.  Background and Procedural History

Plaintiff was born on September 25, 1975.  He graduated from high school,.  AR 475, and has past relevant work experience as a restaurant cashier.  AR 472.  His last insured date was June 30, 2003.  AR 421.  He began serving a 15-year sentence in state prison in July 2003.  AR 418.  Although plaintiff can not receive social security benefit payments while he is incarcerated, benefits could be paid to his two minor children, Alyssa M. Mork and Aaron M. Mork.  20 C.F.R.§ 404.468.

Plaintiff applied for Social Security Disability Benefits and Supplemental Security Income in May 2002, alleging disability as of November 30, 2000 because of back pain and a history of coronary heart disease.  After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on January 12, 2006 before Administrative Law Judge Gregory S. Pokrass at the Waupun Correctional Institution.  AR 453-62.  On April 11, 2006, the administrative law judge issued his decision,

finding plaintiff not disabled.  AR 17-22.  The decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review on May 16, 2006.  AR 5-7.

Administrative Law Judge Gregory Pokrass held a second de novo hearing on February 15, 2007 at the Waupun Correctional Institution after it was discovered that the tapes of the first hearing were inaudible.  The administrative law judge heard testimony from plaintiff, who was represented by a lawyer, AR 453-501, and from a neutral vocational expert.  AR 502-08.  On June 12, 2007, the administrative law judge issued his decision finding plaintiff not disabled.  AR 418-426.  The decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review on October 12, 2007.  AR 411-413

B.  Medical Evidence

Plaintiff injured his lower back in 1997.  AR 528.  A November 19, 2001 magnetic resonance imaging scan indicated that plaintiff had a colossal disc herniated at L5-S1 on the right side and a large disc extruded on the right at the L4-5 level.  AR 105, 528.  On December 19, 2001, Dr. Wojciech Bogdanowicz performed a laminectomy with removal of a very large disc herniation.  AR 105.  On January 17, 2002, plaintiff saw Dr. Bogdanowicz,

who indicated that plaintiff was doing better and referred him to physical therapy.  AR 236.
Plaintiff saw physical therapist John Willson on January 24, 2002.  AR 166-168.

On January 30, 2002, plaintiff suffered an acute anterior wall myocardial infarction
and was admitted by Dr. Timothy Tanke to the University of Wisconsin Hospital in
Madison, where he had a cardiac catherization, angioplasty and placement of two stents in
one of his coronary arteries.  AR 208-210.  On March 17, 2002, plaintiff saw Tanke for a
routine follow-up examination.  Tanke noted that plaintiff was doing very well and had no
complaints of chest pain.  AR 196.

At a visit to Dr. Mark Hughes on May 29, 2002, plaintiff reported that the pain down
his leg had gone away but that he had lower back pain.  Hughes's examination showed
tenderness but no associated muscle spasm, good strength and good reflexes.  Hughes
referred plaintiff back to Dr. Bogdanowicz.  AR 178.

On September 12, 2002, plaintiff reported to Dr. Bogdanowicz that the pain in his
leg had gone away but that he still had lower back pain.  On October 1, 2002, plaintiff had
a magnetic resonance imaging scan.  AR 233-34.  On October 10, 2002, Dr. Bogdanowicz
advised plaintiff that the scan showed a subtle bulge at L5-S1 with no recurrence or scar
tissue formation at L4-5 or L5-S1.  Dr. Boganowicz referred plaintiff to physical therapy for
his back pain, advised him to walk for at least two to three miles a day and suggested that
he lose weight.  AR 232.

4

In December 2002, plaintiff returned to Dr. Bogdanowicz complaining of back and leg pain.  The doctor referred plaintiff for an electromylogram and nerve conduction studies.  He noted that plaintiff's October 2002 magnetic resonance imaging scan had shown some granulation tissue but nothing significant after surgery.  AR 229.  The electomylogram and nerve conduction studies were unremarkable.  AR 228.

On January 23, 2003, plaintiff saw Dr. Bogdanowicz, who speculated that scar tissue was causing plaintiff's lower back pain.  He referred plaintiff for epidural block injections.  AR 247.  The injection was not successful.

Plaintiff was referred to Dr. James Porter for pain control and management.  Porter saw plaintiff on April 7, 2003 and June 16, 2003.  Plaintiff reported constant low back pain that worsened with activity and improved with narcotic medications.  Porter noted that plaintiff had a stable gait, no numbness or tingling of the feet and diffuse tenderness in the lumbar spine.  Porter's impression was that plaintiff had spondylosis but ordered further testing.  AR 242-45.

On June 16, 2003, Dr. Porter completed a physical capacities evaluation of plaintiff and indicated that plaintiff could sit for a half-hour, stand for a an hour and walk for a half-hour.  He concluded that plaintiff could work fewer than eight hours in a day but more than five hours, could occasionally lift and frequently carry ten pounds and occasionally carry up

5

to 20 pounds and could occasionally operate foot controls, but was mildly restricted from exposure to marked changes in temperature and humidity.  AR 239.

The day after the second hearing, plaintiff's lawyer wrote Dr. Porter a letter requesting mote information about his June 16, 2003 assessment of plaintiff.  Dr. Porter responded on February 22, 2007 that plaintiff has lumbar spondylosis exacerbated by soft tissue myofascial pain and frustration or depression.  He wrote: "While my opinion is based on the subjective complaint of pain, my experience would suggest that patients such as Wayne would be unable to regularly work 8 hours a day."  Dr. Porter concluded that plaintiff's restrictions would be permanent and he could not keep a regular competitive work schedule.  He also stated that the October 1, 2002 magnetic resonance imaging scan was consistent with his June 15, 2003 physical capacity evaluation.  AR 545.

When plaintiff was first incarcerated in July 2003, he was medically classified for light activity and restricted to lifting less than twenty pounds.  Plaintiff was recommended for assignments as a sweeper, runner, light gardener, food preparer and server, gatekeeper, assistant, clerical worker and other sedentary assignments.  AR 276.  Plaintiff received regular medical care at the institution.  AR 252-65, 352-95.

In August 2004, plaintiff reported that his back pain had increased.  He saw Dr. Larson, who ordered a set of lumbar spine x-rays, which indicated mild disc space narrowing involving the L4-5 and L5-S1 levels.  AR 337.  In November 2004, plaintiff saw Larson again

and requested a lumbar magnetic resonance imaging scan and an appointment with a pain management specialist because of his chronic low back pain.  AR 269.  The institution refused plaintiff's request for a scan because Larson had determined it was not medically necessary.  AR 268.  However, Larson increased plaintiff's pain medication.  AR 327.

In January 2005, plaintiff refused to go to physical therapy but later that month he asked to see a pain specialist.  AR 322, 324.  In May 2005, he refused to submit to a medical examination for pain management.  AR 319.  In October 2005, he refused to see Dr. Larson for ongoing pain management.  AR 309, 375.  In November 2005, plaintiff refused to submit to a medical examination for pain management.  AR 308.

While plaintiff was incarcerated, he was seen by psychiatrist Royle G. Eenigenburg who diagnosed him with major depression and prescribed antidepressants.  AR 260-65.  He also was seen by psychiatrist Ralph Froelich at the institution.  At his last appointment with Dr. Froelich in October 2005, plaintiff was alert, oriented, coherent and goal oriented.  AR 252-59.

C.  Consulting Physician

On August 12, 2002, Dr. Pat Chan, a  state agency physician, completed a residual physical functional capacity assessment for plaintiff, finding that he had back pain and a history of coronary heart disease, could lift ten pounds frequently and 20 pounds

occasionally and could stand or walk six hours and sit six hours in an eight-hour work day. AR 217-224.  This assessment was affirmed by a disability examiner on January 30, 2003 and by a medical consultant on February 4, 2003.  AR 224.

### D.  Hearing Testimony

Plaintiff explained that he had been placed in segregation because he had been found guilty of misusing prescription medication.  Plaintiff testified that he had actually been keeping pills so that he could take them when the pain was worse.  His segregation was extended to a total of 15 months because he was found guilty of misusing his prescription medication while in segregation.  AR 474-75.  Plaintiff testified that when he was released from segregation at the prison in February 2006, he had walked 300 miles by walking in his cell.  AR 473.

Plaintiff testified that he was seeing a new doctor at the institution who was trying to wean him off pain medication and have him seen by an orthopedic surgeon.  AR 477-78. Plaintiff further testified that he had an electrocardiogram every three or four months because only 41% of his heart works.  AR 478.  He also testified that he had had two heart attacks.  AR 479.  Plaintiff explained that his cardiologist had advised him to avoid exposure to hot and humid weather conditions.  AR 481.

Plaintiff testified that he had pain running down his right leg. AR 485. He testified that he had not seen a psychologist for eight months but that he was depressed. AR 486. Plaintiff explained that he stayed in his cell most of the time but walked to meals, the library, medical appointments and an area to play his guitar. AR 489-491. Plaintiff testified that he was not in any structured daily program. AR 497. He also testified that he had difficulty climbing stairs and bending down but that he walked on a track at the institution. AR 490, 497.

Plaintiff testified that he could no longer sit for a half-hour, could stand for an hour and walk for a half-hour, AR 483, could not work five eight-hour days a week, AR 484, and that he is bedridden one day a month. The last time he was bedridden was three weeks prior to the hearing. AR 499. Later in the hearing, he testified that he lay down all day in his cell three to five times a month. AR 501.

Plaintiff testified that he was taking Indomethacin, amitriptyline and methadone for pain and an enteric coated aspirin for his heart. AR 477-80. He testified that the medication "drags you out a little bit." AR 488.

The administrative law judge called Michelle Albers to testify as a neutral vocational expert. He asked the expert whether plaintiff's past work could be performed by an individual of plaintiff's age, education and work experience, who was limited to sedentary exertional level work with a change of position every 30 minutes, no exposure to temperature

9

or humidity extremes and changes, no bending or crawling and occasional squatting, use of foot controls, climbing and reaching above shoulder level.  AR 502.  The vocational expert testified that such an individual could not perform plaintiff's past work.  She also testified that such an individual could perform other jobs, namely general office clerk, cashier (parking lot, cafeteria, etc.), telephone solicitor and information clerk.  AR 505-506.  Albers further testified that there would be no work available for an individual who could only work five hours a day and would have to miss more than one day of work a month.  AR 507.

Although the administrative law judge denied plaintiff's request for a consultative medical examination, he kept the record open for plaintiff to submit an independent orthopedic evaluation.  AR 467-68, 534.  Plaintiff did not submit an evaluation.  AR 418.

### F.   The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. § 404.1520.  At step one, he found that plaintiff had not engaged in substantial gainful activity at any time relevant to his decision.  At step two, the administrative law judge found that plaintiff had severe impairments of lumbar degenerative disc disease with a history of surgery, a history of coronary heart disease and depression.  AR 421.  The administrative law judge noted that although plaintiff's coronary heart disease and depression are both severe impairments,

plaintiff did not appear to have any symptoms or limitations caused by the coronary artery disease that would restrict him beyond the sedentary level that his back condition warrants. He also indicated that plaintiff's depression did not translate into any specific functional limitation.  AR 423.

The administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  AR 423.  At step four, the administrative law judge determined that plaintiff retained the residual functional capacity to perform sedentary exertional level work with a change of position every 30 minutes and no exposure to temperature or humidity extremes and changes, no bending or crawling and occasional squatting, use of foot controls, climbing and reaching above shoulder level.

In determining plaintiff's residual functional capacity, the administrative law judge found that plaintiff's claims regarding the intensity, duration and limiting effect of his back pain were not credible.  The administrative law judge noted specifically that plaintiff sought strong pain medication but saved it to "give away."  The administrative law judge also noted that he did not find credible plaintiff's explanation that he was saving up the pills to use when the pain peaked.  He found that even if plaintiff's explanation was credible, it meant there were numerous instances when his pain did not require the prescribed medication.  He

11

also noted that plaintiff's present activity level within the limitations of his confinement did not suggest any greater restrictions of his residual functional capacity.  AR 423.

In assessing plaintiff's credibility, the administrative law judge noted that he did not observe plaintiff exhibiting any visual pain, discomfort or fidgeting when he was sitting at the second hearing for more than half an hour, even though plaintiff testified that he could not sit for a half hour.  AR 424.  The administrative law judge found that plaintiff had given contradictory testimony about how often his pain required him to stay in his cell all day. (At first he said it occurred weekly, but then stated that the last time had been three weeks earlier.)  AR 424-25.

The administrative law judge found that plaintiff's residual functional capacity was more restrictive than that found by the state agency physician.  He included some of the postural limitations found by Dr. Porter but "categorically rejected" Porter's opinion that plaintiff is incapable of working an eight-hour day, finding that this opinion was contrary to the medical evidence in the case.  AR 425.  Specifically, he found the opinion inconsistent with the 2004 x-ray of plaintiff's back.  He added that:

> Further, there is no logical reason why the claimant, once limited to jobs within the above very restrictive sedentary functional capacity, could not then perform that level for a full day. It must be emphasized that Dr. Porter is not a vocational expert.  There is no indication that he was aware of the specific functional requirements

12

> of the full range of the jobs in the economy when
> he speculated that the claimant "likely" could not
> handle a "work day."

AR 424.  The administrative law judge also stated that Dr. Porter's failure to specify the exact number of hours that plaintiff could work in a day was significant because a full-time day could fall anywhere in the seven to eight-hour range.  AR 424.

The administrative law judge also found Dr. Porter's February 22, 2007 letter to be not credible.  The administrative law judge indicated that Dr. Porter was trying "to bootstrap his almost 4-year-old assessment to the present although he has not seen the claimant in that time."  He concluded that Porter was speculating again on vocational matters.

At step five, the administrative law judge found that plaintiff was not able to perform his past work but that he could perform a significant number of other jobs in the economy, namely general office clerk, cashier (parking lot, cafeteria, etc.), telephone solicitor and information clerk.  In reaching this conclusion, the judge relied on the testimony of the vocational expert.  AR 425.  As a final comment he added that:

> [t]his claim has been vigorously pressed by claimant's counsel.
> However, the undersigned does not consider it a close call.  The
> claimant is a young, well-educated individual (by Social Security
> standards). It simply is not believable that he is so incapacitated
> that, were he not incarcerated, there is absolutely no full time
> work he can perform within the vast economy of this country.

AR 425.

13

OPINION

A.  <u>Standard of Review</u>

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  <u>Clifford v. Apfel</u>, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  <u>Edwards v. Sullivan</u>, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, <u>id.</u>, and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  <u>Steele v. Barnhart</u>, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).

14

## B. Treating Physician's Opinion

Plaintiff contends that the administrative law judge erred in rejecting Dr. Porter's opinion that he could not work an eight-hour day because there was no medical evidence that contradicted this opinion. Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion. Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. Id. These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id. and must base his decision on substantial evidence and not mere speculation. White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

15

The administrative law judge rejected Dr. Porter's opinion that plaintiff could not work an eight-hour day because Porter did not specify the number of hours plaintiff could work, his opinion was inconsistent with the 2004 x-ray and it was not logical. He also pointed out that Porter was not a vocational expert. The administrative law judge explained that he was not giving weight to Porter's letter explaining his June 16, 2003 assessment because Porter had not seen plaintiff in almost four years. These reasons are well supported.

As the commissioner argues, it is not clear that Dr. Porter could be considered a treating physician because he saw plaintiff only twice on April 7 and June 16, 2003. Plaintiff suggests that because Porter was an associate of plaintiff's treating physician, Dr. Bogdanowicz, he can be considered a treating physician. However, even if Dr. Porter was plaintiff's treating physician, there is substantial evidence in the record contradicting his conclusion that plaintiff could work fewer than eight hours a day.

After Dr. Bogdanowicz had performed plaintiff's laminectomy in December 2001, he saw plaintiff for a follow-up visit on January 17, 2002 and found plaintiff doing better. When plaintiff later reported having lower back pain, Dr Bogdanowicz ordered a magnetic resonance imaging scan that showed a subtle bulge at L5-S1 with no recurrence or scar tissue formation at L4-5 or L5-S1. In response to these results, Boganowicz referred plaintiff to physical therapy for his back pain, advised him to walk for at least two to three miles a day and suggested he lose weight. The December 2002 electomylogram and nerve conduction

16

studies were unremarkable.  AR 228.  On January 23, 2003, plaintiff saw Bogdanowicz who stated that scar tissue was probably causing plaintiff's lower back pain.

Although Dr. Bogdanowicz treated plaintiff for more than two years, he did not impose any limitations on plaintiff's ability to work and the results of the tests he performed did not support plaintiff's pain complaints.  Further, Dr. Hughes also examined plaintiff in 2002 and found no abnormalities when examining plaintiffs' back.  Even Dr. Porter's two examinations of plaintiff were essentially normal.

Dr. Porter wrote in his February 2007 letter that his June 2003 assessment of plaintiff's functional capacity was consistent with the October 2002 magnetic resonance imaging scan.  This scan, however, is the same one that Dr. Bogdanowicz referred to as showing a subtle bulge at L5-S1 with no recurrence or scar tissue formation at L4-5 or L5-S1. After reviewing this scan, Dr. Bogdanowicz ordered physical therapy and advised plaintiff to walk for two to three miles a day and did not impose any work restrictions on plaintiff. Dr. Porter's opinion was not consistent with the conservative treatment plan proposed by Bogdanowicz after seeing he magnetic resonance imaging scan.

In his letter, Porter stated that he based his opinion on that plaintiff could not work an eight-hour day on plaintiff's subjective pain complaints.  It is well-settled that an administrative law judge may disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's

17

credibility.  Diaz v. Chater, 55 F.3d 30 0, 307 (7th Cir. 1995) (administrative law judge could reject portion of physician's report based upon plaintiff's own statements of functional restrictions where administrative law judge found plaintiff's subjective statements not credible); Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001) (affirming administrative law judge's disregard of treating physician's opinion because it "was based largely upon the claimant's self-reported symptoms" and was not supported by the objective medical evidence); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion of disability premised to large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted).  Because the administrative law judge properly discounted plaintiff's subjective statements concerning his symptoms, he could reject any opinions that were based on those statements.

The record includes additional evidence that plaintiff's pain was not as intense as he claimed.  First, he hoarded his pain pills either to give away or use later.  As the administrative law judge concluded, that behavior indicated that there were times when plaintiff's pain did not require the prescribed medication.  Second, plaintiff gave contradictory testimony about his need to stay in bed all day.  He testified that he had to stay in bed three to four times a month but also testified that the last time he had to stay in bed had been three weeks previously.  Third, on several occasions when he was

18

incarcerated he refused to submit to medical examinations for pain management. These refusals are not consistent with an individual who is in unbearable pain.

To the extent that plaintiff is arguing that the administrative law judge should have ordered a consultative examination, I find that such an examination was not necessary. As discussed above, the record contained substantial evidence from which the administrative law judge could make a proper evaluation of plaintiff's medical condition. 20 C.F.R. § 404.1519a(b). In sum, I find that the administrative law judge gave good reasons for rejecting Dr. Porter's opinion and that substantial evidence in the record supports his decision.

## ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Wayne Aric Mork's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 14th day of July, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

19